IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CRIMINAL ACTION H-14-047-1 |
| | § | |
| v. | § | CRIMINAL ACTION H-14-575-1 |
| | § | |
| CHERYL REED JOHNSON | § | CIVIL ACTION H-17-0216 |

### MEMORANDUM OPINION AND ORDER

Defendant Cheryl Reed Johnson, proceeding *pro se*, filed an amended motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255 as to both Criminal Action No. H-14-047-1 and Criminal Action No. H-14-575-1 (Docket Entry No. 195).[1] The Government filed a motion for summary judgment (Docket Entry No. 196; Docket Entry No. 57), to which Defendant filed a response (Docket Entry No. 197).

Having reviewed the amended section 2255 motion, the motion for summary judgment, the response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES the amended section 2255 motion for the reasons that follow.

### *Background and Claims*

Defendant was prosecuted for various criminal offenses in two separate Houston Division cases: Case No. 14-cr-047-1 (the "47 Case"), which is the instant case, and Case No. 14-cr-575-1 (the "575 Case"). Both cases were before the undersigned federal district judge. Defendant pleaded guilty in the instant case on October 14, 2014, to conspiracy to

---

[1]Primary docket entries will refer to Criminal Action No. H-14-047-1, unless otherwise indicated. Secondary docket entries will refer to Criminal Action No. H-14-575-1.

commit mail and wire fraud, conspiracy to defraud the IRS, and falsely claiming a tax refund. She pleaded guilty in the 575 Case on March 31, 2015, to conspiracy to commit mail, wire, and bank fraud, making false statements to a bank in connection with a loan, and wire fraud.

On September 10, 2015, a single, combined sentencing hearing was undertaken covering both cases. Separate sentences were imposed for each case, and separate judgments of conviction were entered. The Court ordered the sentences to run concurrently as to both cases. Defendant filed separate notices of appeal in each case, and the Fifth Circuit Court of Appeals separately affirmed the convictions in each case.

Defendant filed her original section 2255 motion in the instant case, but did not file a separate section 2255 motion in the 575 Case. Her claims for relief in this case overlapped with habeas challenges to the criminal proceedings in the 575 Case. Upon motion by the Government, the Court notified Defendant under *Castro v. United States*, 540 U.S. 375 (2003), of its intent to construe the instant section 2255 motion as a section 2255 motion co- applicable to the 575 Case. In response, Defendant filed the pending amended motion for relief under section 2255 (Docket Entry No. 195), joining her habeas claims as to both cases into one amended section 2255 motion. Likewise, the Government's pending motion for summary judgment addresses the amended section 2255 motion as to both causes of action.

Defendant raises the following claims for habeas relief:

1. The Government breached its plea agreement by criminally prosecuting Defendant in the 575 Case for offenses arising from conduct underlying her guilty plea in the 47 Case.

2. Trial counsel was ineffective in

   a. failing to raise breach of the plea agreement as to the Government's opposition to Defendant's request for acceptance of responsibility;

   b. failing to object to imposition of relevant conduct and the grouping of the counts in separate indictments, as per *Molina-Martinez v. United States*; and

   c. failing to raise a viable argument against the imposition of USSG § 2B1.1(b)(16)(A), as per *Honeycutt v. United States*.

3. Appellate counsel was ineffective in failing to raise claims as to the Government's breach of the plea agreement.

In compliance with the Court's order, trial counsel and appellate counsel submitted affidavits under seal, testifying as to the facts surrounding Defendant's claims for ineffective assistance of counsel. (Docket Entries No. 191, 193.) The Government argues that Defendant's habeas claims are without merit and that the amended section 2255 motion should be dismissed.

## *Legal Standards*

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to section 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the district court that imposed the sentence; (3) the imposition of a sentence in excess

3

of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure, and cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

## *Breach of the Plea Agreement*

Defendant contends that, by prosecuting her in the 575 Case, the Government breached the plea agreement it reached with her in the 47 Case.

The governing law is clear. If a defendant pleads guilty as part of a plea agreement, the Government must strictly adhere to the terms and conditions of its promises as set forth in the agreement. *United States v. McClure*, 854 F.3d 789, 793 (5th Cir. 2017). The defendant bears the burden of proving by a preponderance of the evidence that the Government breached an agreement. *Id.*

To evaluate a defendant's claim of a breach, the courts must consider whether the Government's conduct was consistent with the defendant's reasonable understanding of the agreement. *See McClure*, 854 F.3d at 793. "We apply general principles of contract law in order to interpret the terms of the plea agreement." *United States v. Lewis*, 476 F.3d 369, 387 (5th Cir. 2007). "Thus, when a [plea] contract is unambiguous, this court

generally will not look beyond the four corners of the document." *United States v. Long*, 722 F.3d 257, 262 (5th Cir. 2013).

In the written plea agreement between Defendant and the Government in the 47 Case, the Government agreed that it "will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising *from conduct charged in the indictment*." (Docket Entry No. 75, p. 6, ¶ 9) (emphasis added). The "conduct charged in the Indictment" in the 47 Case was tax fraud, conspiracy related to tax fraud, and wire fraud associated with that tax fraud; in short, it was conduct associated with filing fraudulent tax returns. (Docket Entry No. 1.)

The indictment in the 575 Case, on the other hand, charged conduct as to mortgage fraud, which was conduct wholly unrelated to the filing of fraudulent tax returns. Defendant argues that the mortgage fraud conduct made the basis of the 575 Case was precluded by the plea agreement language in the 47 Case because the Government "was aware of those [mortgage fraud] activities" at the time of the tax fraud plea agreement. Her argument, however, is at odds with the plain language of the plea agreement itself. The Government did not agree not to prosecute all criminal conduct for which it had knowledge or awareness at the time. *See United States v. Elashyi*, 554 F.3d 480 (5th Cir. 2008) (involving plea agreement that expressly precluded "further criminal charges . . . arising out of the facts and circumstances known by the government at this time"). To the contrary, the plea agreement language was expressly limited to non-prosecution of any other offenses arising from the conduct charged in the 47 Case indictment. The

indictments in the 47 Case and 575 Case set forth distinct, disparate criminal conduct, and Defendant does not show that the Government had expressly agreed not to prosecute her for the conduct set forth in the 575 Case indictment.

No breach of the 47 Case plea agreement is shown, and the Government is entitled to summary judgment dismissal of this claim.

To the extent Defendant claims that trial and appellate counsel were ineffective in not raising this claim for breach of the plea agreement, the claim is without merit. Counsel is not ineffective in failing to present groundless objections or arguments. *See, e.g., United States v. Webster*, 392 F.3d 787, 796 n. 17 (5th Cir .2004). Habeas relief is unwarranted.

### *Ineffective Assistance of Trial Counsel*

The United States Supreme Court's decision in *Strickland v. Washington* provides the familiar two-pronged test for establishing a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984). A court need not address both components of the inquiry if the defendant makes an insufficient showing on one. *Carter v. Johnson*, 131 F.3d 452, 463

(5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

A counsel's performance is strongly presumed to fall within the wide range of reasonable professional assistance. *Premo v. Moore*, 562 U.S. 115, 121 (2011). To overcome that presumption, a habeas petitioner must "show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 121-22 (internal quotations omitted). The standard for judging counsel's representation is a deferential one. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.*

"A plea of guilty admits all the elements of a formal criminal charge and waives all non-jurisdictional defects in the proceedings leading to conviction." *United States v. Owens*, 996 F.2d 59, 60 (5th Cir. 1993). A guilty plea also eliminates objections to searches and seizures that violate the Fourth Amendment. *United States v. Cothran*, 302 F.3d 279, 285-86 (5th Cir. 2002). Where, as here, a defendant has pleaded guilty and waived his right to file a motion pursuant to section 2255, the only ineffective assistance of counsel claim to survive the waiver is one claiming the ineffective assistance "directly affected the validity of waiver or the plea itself." *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002).

Moreover, a habeas petitioner must show that, "but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial" and that going to trial

"would have given him a reasonable chance of obtaining a more favorable result." *United States v. Batamula*, 823 F.3d 237, 240 (5th Cir. 2016) (en banc) (internal citation and quotation omitted).

The pleadings of a *pro se* prisoner litigant are reviewed under a less stringent standard than those drafted by an attorney, and are provided a liberal construction. *Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, a *pro se* litigant is still required to provide sufficient facts to support his claims, and "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Accordingly, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertion on a critical issue in his *pro se* petition . . . to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

Defendant contends that trial counsel was ineffective in the following three instances.

### *Opposition to acceptance of responsibility*

Defendant argues that in the plea agreements for both the 47 Case and the 575 Case, the Government agreed not to oppose her requests for an acceptance of responsibility downward departure. She contends that the Government breached the plea agreements "by affirmatively supporting the application of the grouping provisions in its sentencing memo" and that trial counsel was ineffective for not raising this purported breach at sentencing. In short, Defendant argues that she was entitled to a three-level decrease for

8

acceptance of responsibility in *both* the 47 Case and the 575 Case, for a total decrease of six levels.

The plea agreements in both of the cases contained substantially similar language providing that, "[a]t the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that she receive a two (2) level downward adjustment under USSG § 3E1.1(a) of the Sentencing Guidelines should Defendant accept responsibility as contemplated by the Sentencing Guidelines." (Docket Entry No. 75, p. 5; Docket Entry No. 18, pp. 5-6.) The two plea agreements also stated that the Government likely would not oppose Defendant's request for a three-level reduction under USSG § 3E1.1(b), assuming certain criteria were met. (Docket Entry No. 75, p. 5; Docket Entry No. 18, pp. 6-7.)

In responding to Defendant's habeas claims, trial counsel submitted an affidavit, wherein he set forth the following background information regarding the plea agreements:

> [Defendant's] claim for failure to raise breach of plea agreement is without merit because of the timing and filing of the second criminal case against [her]. During the majority of the litigation in [the 47 Case] leading up to and until her plea agreement in that matter, [Defendant] was aware of the additional potential criminal charges she faced. The parties negotiated[,] investigated and discussed these additional charges prior to [Defendant's] plea in the above cited case number.
>
> * * * *
>
> The parties spent several months in negotiations on the cases but reached an impasse on an agreement for both cases. The parties were able to reach a plea agreement in [the 47 Case]. In October 2014, the parties again communicated about the status of the case and the potential for resolution. At that time, the parties had an agreement on [the 47 Case] but no agreement

> on [the 575 Case]. Based on the impasse, the parties moved forward with the plea agreement in [the 47 Case].
>
> After the plea was had in [the 47 Case], the United States, as anticipated, moved forward with the additional charges against [Defendant]. It remains this counsel's belief and understanding that this filing was anticipated by all parties and did not violate the spirit of the original plea agreement or any portion thereof.
>
> Because the parties and [Defendant] were fully aware of the additional charges that [Defendant] faced, counsel feels it would have flown in the face of the litigation to file breach of contract claim. After spending so vast an amount of time negotiating the second set of charges against [Defendant], to then immediately file the motion that [she] speaks of would have been ridiculous. The new charge did not come as a surprise and did not violate or breach the plea agreement between [Defendant] and the United States. Hence the reason why this counsel never raised a breach of the plea agreement. This counsel and [Defendant] discussed the potential issue with grouping of offenses under the sentencing guidelines, which led to a request for a variance or departure under the guidelines for an additional reduction in the computation of [Defendant's] guideline range based on acceptance of responsibility in both cases. However, the court denied such request.

(Docket Entry No. 191, pp. 1–3.)

Defendant does not establish that, had counsel argued at sentencing that the Government breached the plea agreement as to acceptance of responsibility, this Court would have ruled in her favor. Nothing in the records before this Court supports Defendant's claim of entitlement to two three-level decreases for acceptance of responsibility or that the Government breached any provision of the plea agreement as to acceptance of responsibility.

Nor does Defendant establish that she would not have pleaded guilty in the 575 Case had she known she would not be given three-level acceptance of responsibility decreases for each of the two cases. She frames this complaint as a sub-issue claiming ineffective

assistance of counsel. However, this Court carefully and thoroughly admonished Defendant at the plea hearings that no decisions had been made regarding her sentences and no promises could be made or enforced as to her sentences. Defendant acknowledged her understanding of those admonishments in open court on the record, including her guilty plea hearing in the 575 Case. (Docket Entry No. 46, pp. 11-15, 18-21.) "[S]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). Neither the Government nor trial counsel could promise as of the plea hearing that she would – or would not – receive two three-level decreases, and her desire to obtain those decreases could not have formed a basis for her decision to plead guilty.

Further, Defendant also fails to show that she would have proceeded to trial in lieu of pleading guilty. Her conclusory assertions are unsupported and provide no basis for habeas relief. *See United States v. Batamula*, 823 F. 3d 237, 240 (5th Cir. 2016) (en banc) (holding that to show prejudice, a defendant who pleaded guilty must show, based on the totality of the circumstances, "a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (internal quotation marks omitted); *United States v. Kayode*, 777 F.3d 719, 725 (5th Cir. 2014) (explaining that the circumstances considered in this inquiry include (1) the defendant's evidence to support his assertion that he would have proceeded to trial, (2) his likelihood of success at trial, (3) the

risks he would have faced at trial, (4) his representations about his desire to retract his plea, (5) his connections to the United States, and (6) the district court's admonishments).

Defendant shows neither deficient performance nor actual prejudice, and habeas relief is unwarranted on this claim.

*Relevant conduct and indictment groupings*

Defendant next asserts that trial counsel failed to object to the grouping of her two cases for sentencing and relevant conduct purposes, in violation of *Molina-Martinez v. United States*, ___ U.S. ___, 136 S. Ct. 1338 (2016). Specifically, she claims that "[t]he submission of false tax claims to the IRS was not relevant conduct to [her] unauthorized use of social security number[s] to apply for a loan with Unity Bank." (Docket Entry No. 195, p.11.) Defendant's arguments are incorrect.

Under the Sentencing Guidelines, "[a]ll counts involving substantially the same harm shall be grouped together into a single group," and counts involve substantially the same harm "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss," including offenses covered by § 2B1.1 (fraud). 9 USSG. § 3D1.2(d). The record shows that Defendant's fraud convictions as to both cases were grouped "for determining a single offense level that encompasses all the counts of which the defendant is convicted." *See* USSG Part D intro. cmt.

Because the convictions were grouped under § 3D1.2(d), the Government has correctly argued that relevant conduct for determining the applicable guideline range in this instance was all acts and omissions "committed, aided, abetted, counseled, commanded,

induced, procured, or willfully caused" by Defendant or "all foreseeable acts and omissions of others in further of jointly undertaken criminal activity" "that were part of the same course of conduct or common scheme or plan as the offense of conviction." *See* USSG § 1B1.3(a). The PSR in the two cases determined that the convictions for each were relevant conduct because both schemes involved the unauthorized use of social security numbers belonging to others and involved misrepresentations of employment.

Defendant contends that counsel should have objected because her fraudulent tax returns were not relevant conduct to her use of an unauthorized social security number in a bank loan. (Docket Entry No. 195, pp. 11-12.) She asserts that "[t]he commonality between the two cases was the fact that both showed a minute pattern of using unauthorized social security numbers and misrepresentation of employment. But the *modus operandi* was different." *Id.*, p. 12. Her argument is specious. A common *modus operandi* existed between the cases as well as a common purpose – the use of unauthorized social security numbers and information to defraud in financial transactions.[2] Consequently, the PSR correctly determined the relevant conduct and the guideline range. See U.S.S.G. § 1B1.3 cmt. n.9.

Although Defendant initially cited *Molina-Martinez v. United States*, ___ U.S. ___, 136 S. Ct. 1338 (2016), in stating her claim (Docket Entry No. 195, p. 2), she

---

[2]*See, e.g.*, USSG § 3D1.2 cmt. n.6 (noting as an example of appropriate grouping: "The defendant is convicted of five counts of mail fraud and ten counts of wire fraud. Although the counts arise from various schemes, each involves a monetary objective. All fifteen counts are to be grouped together.").

presents no arguments utilizing the case. *Id.*, pp. 10-13. Accordingly, any argument under *Molina-Martinez* has not been briefed and has been abandoned.

Because this Court finds no merit to Defendant's argument, she cannot, and does not, show deficient performance or actual prejudice under *Strickland*. The Government is entitled to summary judgment dismissal of this claim.

### *Imposition of 2-level enhancement*

Defendant argues that trial counsel should have raised a viable argument against the imposition of a 2-level enhancement under USSG § 2B1.1(b)(16)(A). The PSR in Defendant's case determined that she personally received more than $1,000,000.00 for relevant conduct purposes, for which she received a 2-level increase under USSG § 2B1.1(b)(16)(A). Defendant contends that counsel should have raised a viable argument against the enhancement, particularly one relying on *Honeycutt v. United States*, ___ U.S. ____, 137 S. Ct. 1626 (2017). Defendant's reliance on *Honeycutt* is misplaced.

In *Honeycutt*, the Supreme Court ruled that a defendant may not be held jointly and severally liable for property a co-conspirator derived from the crime that the defendant himself did not acquire. 137 S. Ct. at 1631-33. The Court examined a federal statute mandating forfeiture "of any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" certain drug crimes. *Id.* at 1630 (quoting 21 U.S.C. § 853). Simply put, limiting forfeiture to the property a defendant personally obtained from a drug crime in no way required the Government to prove in Defendant's case that she herself obtained property from a victim. The forfeiture of

14

property obtained from drug-related criminal conduct played no part in Defendant's prosecutions, convictions, or sentencing. *Honeycutt* has no application to Defendant's case, and provides no basis for habeas relief.

Nor does Defendant offer any other cogent objection or argument that likely would have succeeded had it been presented by trial counsel. The record shows that trial counsel raised lengthy, well-supported but ultimately unsuccessful arguments against imposition of the 2-level enhancement. Contrary to Defendant's contentions, trial counsel did challenge the enhancement based on Defendant's lack of direct gain or personal responsibility for a major portion of the PSR's economic-loss calculation. In his written objections to the PSR, trial counsel specifically objected to the economic-loss calculation for purposes of intended and actual loss, arguing that the amount should be $635,000.00 or $595,120.00 for intended loss or $287,971.00 for actual loss. (Docket Entry No. 104, p. 1.) Counsel submitted with his objections a spreadsheet showing Defendant's actual financial involvement in the fraudulent tax returns. *Id.* Using those figures, counsel argued that the offense level under USSG § 2B1.1 should be 21, and objected that the 2-level increase under § 2B1.1(b)(16)(A) because Defendant "did not derive more than $1,000,000 in gross receipts direct or indirectly." *Id.*, pp. 8–9. Trial counsel re-urged the objections and financial analysis at sentencing. That this Court ultimately did not adopt counsel's financial figures does not mean that counsel was ineffective in how he presented and argued the issue.

Trial counsel was not ineffective in failing to rely on *Honeycutt* in challenging the 2-level enhancement. Nor does the record indicate that trial counsel agreed his arguments were improper.³ Because Defendant establishes no other meritorious argument that likely would have succeeded if raised, she demonstrates neither deficient performance nor actual prejudice. The Government is entitled to summary judgment dismissal of this claim as to the two-level enhancement under § 2B1.1(b)(16)(A).

### *Ineffective Assistance of Appellate Counsel*

Defendant alleges that appellate counsel was ineffective in failing challenge on direct appeal the Government's breach of the plea agreement regarding its opposition to Defendant's request for two three-level decreases for acceptance of responsibility. Although unclear, Defendant may also be complaining that appellate counsel did not challenge the Government's prosecution of her in the 575 Case as a breach of the 47 Case plea agreement.

In addressing Defendant's claims, appellate counsel submitted an affidavit in which he testifies as follows:

> During my preparations for the writing and filing of the Appellant's Briefs in this case, I had one in-person conference with [Defendant] at the FDC-Houston before she was moved to Fort Worth, and thereafter I had at least ten telephone conferences with her. I also received and responded to five e-mails from her daughter, Yashica Reed.

---

³To the contrary, trial counsel noted that, because the Court had adopted the PSR's financial calculations in lieu of the defense's version, his objections to the 2-level enhancement were essentially overruled. (Docket Entry No. 166, p. 16.) This Court agreed. *Id.*

16

During[] my initial conference with the Defendant, she declared to me that she only had issues with the sentencing disparity which she believed to be evident between her sentence and those of her co-defendants. She never mentioned the fact that she had an issue with being further prosecuted for offenses arising from conduct charged in the [i]ndictment.

At no time did she inform me that she had an issue with a possible breach of the [p]lea [a]greement on the part of the government.

During the course of my representation, and while preparing for the writing and filing of the Appellant's Briefs, [Defendant], through her daughter Yashica Reed sent me several e-mails with allegations of breach of the plea agreement and legal research that she believed supported her allegations.

After each e-mail transmission, I would receive a telephone call from [Defendant] asking me if I had received the e-mails and the legal research. I would answer her questions and attempt to get her to understand that, in my opinion, it would be frivolous to include that issue in the appeal.

I would attempt to steer her back to the fact that she had signed a written plea agreement, and that we had to attack the voluntariness of the plea agreement, if we were to have any chance at having the plea agreement invalidated by the Fifth Circuit Court of Appeals, otherwise all other issues would be foreclosed.

After I had read the record, the transcripts, and conducted my own legal research, I came to the conclusion that our only opportunity to have the Fifth Circuit Court of Appeals invalidate the plea agreement, was to attack the voluntariness of the plea agreement, and the failure by the court to fully comply with Rule 11 of the Federal Rules of Criminal Procedure by not completely ascertaining as to whether or not the plea was made knowingly and voluntarily.

Without exception, during each of our communications, [Defendant] would insist that I include her allegations of a breach of the plea agreement because the government prosecuted her for offenses arising from conduct charged in the [i]ndictment. During our telephone conversations, [Defendant] would not want to accept that this issue was a frivolous issue, and that I was not going to file any frivolous issues in the appeal. She would not want to hear my explanations as to why her allegations of a breach of the plea agreement were frivolous. She failed to understand that where the wording of the [p]lea [a]greement referred to any further criminal prosecution for offenses arising

> from conduct charged in the [i]ndictment, it meant that she would not be further prosecuted for any other criminal activity arising out of the same conduct charged in the [i]ndictment. Furthermore, [Defendant's] agreement as to the factual basis in the plea agreement[] foreclosed her allegations of breach of the plea agreement in an appeal.
>
> As this court well knows, written plea agreements are extremely difficult to invalidate, and it is my opinion that any opportunity to invalidate the plea agreement in this case was to attack the court's failure to comply with Rule 11 of the Federal Rules of Criminal Procedure. And, as this court knows, that had I filed a frivolous issue with the Fifth Circuit Court of Appeals, I would have been sanctioned.
>
> I believe that I expended more than enough time communicating with [Defendant] and researching the issue of an involuntary [p]lea [a]greement.
>
> Short of filing an [*Anders*] brief, I presented the best non-frivolous issues in the appeal that I believed would be considered by the Fifth Circuit Court of Appeals.

(Docket Entry No. 193, pp. 1–3.)

Because Defendant has not shown that the Government breached its plea agreement by prosecuting her in the 575 Case, she shows no deficient performance or actual prejudice under *Strickland*. That is, she has not established that, but for appellate counsel's failure to complain on appeal that the Government breached the plea agreement, there is a reasonable probability that the results of the appeal would have been favorable. Nor does she establish that counsel's refusal to raise the issue on appeal was unreasonable appellate strategy in light of the facts and law, and no ineffective assistance of appellate counsel is shown.

For similar reasons, Defendant further fails to show that, but for appellate counsel's failure to challenge on appeal the Government's opposition to her request for two three-

level decreases for acceptance of responsibility, there is a reasonable probability that she would have prevailed on appeal.

Defendant establishes neither deficient performance nor actual prejudice under *Strickland*. The Government is entitled to summary dismissal of Defendant's claim.

## *Conclusion*

The Court ORDERS as follows:

1. Copies of Docket Entries No. 195 and 197 in this case shall be docketed in Criminal Action No. H-14-575-1.

2. The Government's motion for summary judgment (Docket Entry No. 196; Docket Entry No. 57) is GRANTED.

3. Defendant's amended motion for relief under section 2255 (Docket Entry No. 195) is DISMISSED WITH PREJUDICE.

4. A certificate of appealability is DENIED.

5. Civil Action No. H-17-0216 is ORDERED ADMINISTRATIVELY CLOSED.

Signed at Houston, Texas on November 20, 2017.

Gray H. Miller
United States District Judge